SAVOY, Judge.
This is a suit instituted by plaintiff, Jack Lavergne, against his employer, Joe Fran *768 cois, d/b/a Whole Builders, and his insurer, Home Indemnity Company, under the Workmen’s Compensation Act for total and permanent disability as a result of an accident and resulting injuries received by plaintiff on April 3, 1963, which occurred in the course of his employment for Wholesale Builders. Plaintiff alleged that as a result of the accident he suffered from severe pain in the neck and is unable to use his right arm. He also asked for penalties and attorney’s fees. Defendants filed an answer to the suit, admitting the accident but averring that plaintiff had recovered from the injuries received in the accident and that all compensation benefits due him had been paid.
Plaintiff then filed a supplemental petition stating that he had been examined by Dr. H. Gunther Perdigano, a psychiatrist, and that according to the doctor’s examination, he determined that plaintiff was suffering from a severe chronic brain syndrome. Defendants filed a general denial to the supplemental petition. After a trial on the merits, judgment was rendered in favor of plaintiff granting him compensation for total and permanent disability, but disallowing penalties and attorney’s fees. From this judgment defendants appealed.
There is no question that plaintiff suffered an injury to his right shoulder resulting from the injury received when he was struck by a skill saw which weighed approximately eight pounds. The evidence reflects that the saw struck his neck. There is conflicting evidence as to' whether plaintiff was struck on the head and whether the brain injury is the result of disease or whether it was caused or aggravated by trauma.
Plaintiff was examined by numerous specialists in the field of medicine. We will attempt to summarize the individual findings of these doctors.

Dr. L. Lazaro.

Dr. Lazaro is a physician and surgeon. He saw plaintiff the same date of the accident. Plaintiff told the doctor he was struck on the shoulder. The doctor examined plaintiff and found he had a laceration of his right shoulder which was superficial and involved a few fibers of the del-toid muscle. Plaintiff also complained of pain in the neck, but never did complain of any injury to his head. Plaintiff was discharged on April 10, 1963, at which time the doctor stated plaintiff did not need further treatment. Because of plaintiff’s complaints, he was referred to Dr. Moss M. Bannerman.

Dr. Moss M. Bannerman.

Dr. Bannerman is a specialist in the field of orthopedic surgery. He saw plaintiff six times between June 13 and November 13, 1963. He also saw plaintiff on February 15, 1965. Plaintiff gave a history of having been struck by a skill saw which cut him on the right shoulder and also struck him on the side of the neck. The doctor examined him on June 13, 1963, and found a healed scar over the right shoulder with good motion of the shoulder and no weakness or sensory changes. The doctor prescribed exercises and heat and traction for his neck. Plaintiff was discharged as being able to go back to work on November 13,1963.

Dr. William L. Meuleman.

Dr. Meuleman specializes in orthopedic surgery. He saw and examined plaintiff at the request of Dr. Lazaro on August 21, 1963. He gave Dr. Meuleman the same history as he had previously given to Dr. Ban-nerman. Plaintiff complained of pain at the base of the skull. After an examination of plaintiff’s shoulder, neck and skull, Dr. Meuleman could not find that plaintiff had any physical disability.

Dr. Joseph M. Edleman.

Dr. Edleman is a specialist in neurosurgery. He saw and examined plaintiff on February 21, 1964. This was done at the request of plaintiff’s attorney. The plaintiff’s history was obtained through an interpreter who accompanied plaintiff to the office of *769 the doctor. Plaintiff was concerned about his headaches which involved the right side of his head. He also complained of dizziness.
Dr. Edleman could find no evidence of neurological impairment at the time of the examination. Dr. Edleman stated that he did not have X-rays made of plaintiff’s skull, his vertical spine or shoulder. He felt that an electroencephalogram should have been made in view of the headaches complained of by plaintiff. He said that a diagnosis of chronic brain syndrome is in the field of neurosurgery, but that it was used primarily by psychiatrists. He stated that the syndrome could be caused by disease or by trauma. He also stated that a person who had progressed to a state of regression where he is unable to do simple things, would have to have a brain injury whereby he is rendered unconscious for weeks or months.

Dr. Gunther H. Perdigano.

Dr. Perdigano is a specialist in psychiatry. He saw the plaintiff on July 8, 1964. Plaintiff could not communicate, would stare in space, and did not answer questions addressed to him. He was not capable of reasoning or of thinking and could answer only simple questions. Plaintiff’s daughter gave a history of plaintiff being struck on the head and shoulder on April 3, 1963, by an electric saw.
The doctor made a finding of severe chronic brain syndrome and that this condition was permanent. He could not state with certainty whether this condition was caused by disease or by trauma. He stated that a blow to the head could cause this condition.

Dr. Clayton B. Bdisen.

Dr. Edisen’s practice is limited to psychiatry. He examined plaintiff on February 12, 1965, at the request of counsel for defendants. He diagnosed plaintiff’s condition as chronic organic brain syndrome. He stated that for a trauma to cause the condition which plaintiff has, the blow would have to be of such a nature that would render plaintiff unconscious, and he would remain in a coma for several weeks. He stated that assuming the daughter’s testimony to be correct, he believed plaintiff was injured on the job, and that he had undergone mental changes. However, on cross-examination he said that a less severe blow than he had stated on direct examination could cause the condition complained of by plaintiff.
The record reflects that prior to the accident plaintiff had a good work record. The lay witnesses testified that prior to the accident plaintiff appeared to be in good health and did not complain of any illness. Plaintiff’s mental condition commenced to deteriorate following the accident, and his condition became progressively worse so that at the time of the trial, plaintiff was said to be a living vegetable. His mental capacity to understand or comprehend was very limited. He had a lapse of memory and was admittedly permanently and totally disabled. Counsel for defendants lays much stress on the fact that plaintiff did not state to the first three or four doctors that he had suffered a blow to the head. This is understandable. Plaintiff was illiterate, did not speak English, and had to have a translator at the numerous medical examinations which he had prior to trial.
Considering the evidence as a whole, we are of the opinion that plaintiff has carried the burden of proof sufficiently to allow him to recover in the instant case.
For the reasons assigned the judgment of the district court is affirmed. Appellants to pay costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.