Traian PRUTEANU,
Claimant/Respondent,

v.

ELECTRO CORE, INC.,
Employer/Appellant.

No. 62126.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 16, 1993.

John J. Johnson, Jr., Brown & James, P.C., St. Louis, for employer/appellant.

Prudence Fink Johnson, Carlson & Associates, Union, for claimant/respondent.

REINHARD, Judge.

Employer appeals from a final award of the Labor and Industrial Relations Commission (Commission), affirming an award of workers' compensation benefits to claimant. We affirm.

Claimant is a refugee from Rumania who arrived in America on April 20, 1988. He cannot speak English and thus testified through an interpreter at the administrative hearing.

The evidence at the hearing consisted of the testimony of claimant; Ester Salenuic, his sister-in-law; and Bondor Dragos, a Rumanian co-worker who spoke some English. Claimant's exhibits included medical records from St. John's Hospital; a letter from Dr. Conrad, claimant's expert; the deposition of Dr. Bonney, the company doctor; and copies of medical bills in the amount of $9,938.07.

Claimant worked as a machinist at employer's place of business in Washington, Missouri. He testified that on October 18, 1988, he was working with a winding machine which required him to bend down, pick up parts, and place them on the machine. While lifting the cone of a transformer, he felt a sharp pain in his back which caused him to drop the cone onto his knee. It cut through his pants and made a deep laceration in his right knee. The machine which he worked on was old and did not work very well. Normally a co-worker helped claimant lift parts onto the machine, but on the day of the accident there was no one around to help him.

Claimant explained, as best he could considering the language barrier, to Kevin, his supervisor, the following:

I told the supervisor is [sic] that I was picking up this part, it hit my leg, and it cut my leg. [I] dropped the part because of the pain in my back. After the original pain in the back it didn't hurt as bad after that. It again started hurting in about three days.

His leg was bleeding severely and he was taken by Norman, the boss' son, to the offices of Dr. Bonney. Once there, claimant pointed to his back and leg so as to indicate the areas where he felt pain. Dr. Bonney treated his knee and sewed up the laceration with ten stitches. Claimant returned to Dr. Bonney's office on four other occasions to receive treatment for his knee, but did not mention the back injury during those visits.

Claimant was off work for three days after the October 18, 1988, accident. When he went back to work he still felt the pain in his back, but continued to work because he had a large family to support. Sometime in June, 1989, he got a Rumanian speaking co-worker to ask the supervisor if he could move to another job because the pain in his back was making it hard to stand. The supervisor came and looked, but took no action. Claimant continued to work until a strike on September 5, 1989.

He did not complain again to his supervisor because he realized the supervisor was not going to help and he knew the strike was imminent.

In September, 1989, claimant's pastor referred him to Dr. Dunn. Claimant and Ester Salenuic went to Dr. Dunn's offices on September 12, 1989. Ms. Salenuic, who is fluent in English and Rumanian, acted as an interpreter. Dr. Dunn diagnosed claimant as having a herniated disc, and performed surgery to remove the disc on September 26, 1989. Two days later claimant was released from the hospital and instructed not to return to work for two or three months.

Ms. Salenuic and Mr. Dragos testified on claimant's behalf at the hearing. They both stated that prior to claimant's accident at work he had not complained of back pain. Ms. Salenuic testified that claimant lived with her and her family. She stated that after the accident he continually complained that his back and leg hurt. Mr. Dragos testified that he worked at a station near claimant and witnessed the transformer cone's fall onto claimant's leg. He stated that he knew claimant's back was hurting immediately after the accident. He further said that he and claimant rode to work together and that claimant often complained of back pain following the accident.

In a letter admitted into evidence at the hearing, Dr. Conrad, claimant's expert, estimated a 20% permanent partial disability of the body as a whole referable to the back injury and surgery, and a 5% permanent partial disability of the body as a whole referable to the right knee. Dr. Conrad recommended that claimant not work in a job which required repeated bending or heavy lifting.

In a deposition admitted into evidence at the hearing, Dr. Bonney testified that he was employer's doctor for employees injured on the job. He stated that when claimant first came in to see him, he was unable to obtain information concerning how claimant had been injured because claimant did not speak English and an adequate interpreter was not present. He further testified "that the only thing [he] could treat was what [he] saw." Claimant's only visible injury was the bleeding leg.

Employer presented no evidence at the administrative hearing. In her award, the administrative law judge (ALJ) began her findings of fact as follows:

Being present at this hearing clearly indicated the potential for confusion and lack of understanding when you have a person who is unfamiliar with the English language trying to communicate on his own and through an interpretor [sic]. The claimant was a pleasant and agreeable man who occasionally answered "Yes" without understanding a question presented to him in English. This was apparent when the question was translated and he would respond with a complete answer. I found the claimant and the other witnesses to be credible.

The ALJ found claimant sustained a 22% permanent partial disability as a result of his back injury and a 2% permanent partial disability as a result of his leg injury. She also held employer liable for all medical expenses related to the back injury.

Employer sought review before the Commission; it subsequently adopted the ALJ's findings and affirmed the award of compensation to claimant. Employer appeals.

■ On appeal, we examine the record in the light most favorable to the award. *Jacobs v. Ryder System/Complete Auto Transit*, 789 S.W.2d 233, 235 (Mo.App. 1990). If the award is supported by competent and substantial evidence, we do not disturb it. *Id.*

We review only questions of law and may modify, reverse, remand for rehearing, or set aside the award only upon one or more of the following grounds:

(1) that the Commission acted without or in excess of its powers;

(2) that the award was procured by fraud;

(3) that the facts found by the Commission do not support the award;

(4) that there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1, RSMo 1986.

Initially, we note that employer's three points on appeal leave much to be desired. Setting out only abstract statements of law without showing how they are related to any action or ruling of the Commission is not in compliance with Rule 84.04(d).

Employer first contends that the Commission's award is not supported by competent and substantial evidence because its finding that claimant sustained a back injury at work is contrary to the evidence. We disagree.

■ "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Ford v. Bi–State Development Agency*, 677 S.W.2d 899, 904 (Mo.App.1984). The testimony of claimant, Ms. Salenuic, and Mr. Dragos, along with the medical records and Dr. Conrad's report, constitutes substantial and competent evidence that claimant's back injury was work-related.

■ Employer next contends that the Commission erred in finding it liable for medical treatment procured by claimant. It claims that it received no notice that claimant needed medical treatment for his back nor was demand ever made on employer to furnish the treatment.

On this issue, the Commission found:

The employer puts authorization in issue in this matter, arguing that the claimant never asked for treatment for his back. Language barrier, [sic] not-

withstanding, I find that there are sufficient facts in this case to find that the claimant did attempt to demand treatment for his back, and the employer ignored the demands and refused and/or neglected to provide the needed treatment. When an employer has notice that the employee needs treatment, or a demand is made on the employer to furnish medical treatment, and the employer refuses or fails and neglects to provide needed treatment, that employer is held liable for the medical treatment procured by the employee. *Hawkins v. Emerson Electric Co.*, 676 S.W.2d 872 (Mo.App. 1984).

We believe that the record fully supports the Commission's findings on this matter.[1]

■ Employer's final point borders on the frivolous. It asserts that the Commission's granting of claimant's request for a hardship setting resulted in a denial of due process.

The rules of the Commission concerning a hardship setting are as follows:

If the claimant for workers' compensation requests a hardship setting before the commission, an accelerated briefing schedule may be set and oral argument shall be denied. The request for a hardship setting shall be made in the application for review, in an answer to the application or in a separate motion to the commission and shall set forth the reason expedited review is necessary. The commission shall have discretion to designate a cause as a hardship case.

8 C.S.R. 20–3.030(7).

Claimant requested a hardship setting in his Answer to employer's Application for Review. He stated that the accident had occurred "3½ years ago" and he had not

---

1. Much of the difficulty in this case was the result of claimant's inability to speak English. In the case of *Lavergne v. Francois*, 205 So.2d 767 (La.App.1967), a similar language barrier was present. The claimant in *Lavergne* was injured at work when struck by a saw and subsequently developed a head injury and a right shoulder injury. On appeal, the issue was whether claimant's head injury was the result of being struck by the saw. In finding for claimant, the *Lavergne* court noted the following:

Counsel for defendants lays much stress on the fact that plaintiff did not state to the first three or four doctors that he had suffered a blow to the head. This is understandable. Plaintiff was illiterate, did not speak English, and had to have a translator at the numerous medical examinations which he had prior to trial.

*Id.* at 769. We find this language applicable to the present case.

received any money for medical care relating to his back injury, temporary total disability, or permanent partial disability. He further explained that he was being sued for unpaid medical bills and was having difficulty supporting his family. The Commission granted claimant's request for hardship setting; it denied oral argument and accelerated the briefing schedule.

This case was before the Commission after a full administrative hearing. Employer presented no evidence at this hearing. After the hearing, the ALJ issued an award which contained extensive findings of fact and rulings of law. On review, the Commission allowed both parties to file briefs. We find no denial of due process in the Commission's granting claimant a hardship setting.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.