749 So.2d 1227 (1999)
UNITED METHODIST SENIOR SERVICES and Liberty Mutual Insurance Company, Appellants,
v.
Laura C. ICE, Appellee.
No. 1998-WC-00999-COA.
Court of Appeals of Mississippi.
September 14, 1999.
*1228 George E. Read, Oxford, J. Keith Pearson, Greenville, Attorneys for Appellants.
Gregory W. Harbison, Tupelo, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Laura C. Ice was awarded workers' compensation benefits for a back injury. The employer appeals, alleging that responsibility for the injury should be assigned to a subsequent employer, and further that the medical testimony supporting causation was speculative. We find substantial evidence to support the Workers' Compensation Commission's factual finding on the central matter in dispute, namely, that the back injury that Mrs. Ice suffered while working for one employer was not worsened nor otherwise affected by her work for a subsequent employer. We therefore affirm.

FACTS
¶ 2. The claimant in this case, Mrs. Laura C. Ice, suffered a back injury during the course of her duties as a certified nursing assistant with United Methodist Senior Services. The injury occurred while transferring a patient from his bed to a wheelchair. Mrs. Ice went to the emergency room and subsequently saw her own doctor. He referred her to two specialists, one of whom was Dr. McDonald. On July 2, 1996, Dr. McDonald surgically removed all the material from inside the degenerated, bulging disc, a procedure called a microdiskectomy. The doctor determined that the claimant had reached maximum medical improvement on October 1, 1996, and authorized her to return to work without restriction but with a 10% permanent partial disability.
¶ 3. Mrs. Ice was concerned that returning to her employment as a nursing assistant might result in further injury *1229 since the job required lifting. She did not seek to return to United Methodist Senior Services and instead took a position in October 1996 as a sales clerk with Belk Department Store. The job required a considerable amount of standing that she asserted caused her great discomfort due to her prior back injury. She left the job after six weeks. She next worked for another retail store, Dollar Tree, but had to leave work early several times due to her back pain. Mrs. Ice stated that her employer stopped scheduling her for work and she was effectively terminated.
¶ 4. On February 17, 1997, the claimant returned to Dr. McDonald. Another MRI was conducted. It revealed a recurrent disc herniation that did not appear on an MRI taken on August 26, 1996. This condition was described by Dr. McDonald as having resulted from some small fragment of the disc whose nucleus had earlier been removed, being left behind and eventually working its way out the same hole in the covering of the disc as was used for the surgery. That fragment ultimately forced its way through the hole. Considerable dispute existed regarding whether some new injury causes this problem or whether it "just happens." Dr. McDonald recommended a second surgery, but approval for this was denied by her first employer, United Methodist Senior Services, as not being its responsibility.
¶ 5. Proceedings were commenced by Mrs. Ice solely against Senior Services. The administrative judge and the Commission found that this first employer was responsible. The circuit court affirmed.

DISCUSSION

Issue 1: Whether the correct legal standard was applied
¶ 6. The employer argues that the Commission applied an incorrect legal standard to a situation in which an injury occurs while the claimant is working for one employer, but the problem recurs while working for a second. We first state the appropriate standard, and then determine whether that is what the Commission applied.
¶ 7. The starting point for analysis is that the Commission may not apportion responsibility for claims between employers. Singer Co. v. Smith, 362 So.2d 590, 592-93 (Miss.1978):
Our statutes make no provision for apportionment of awards except in the case of preexisting handicap or disease. Here, the apportionment is between successive employers or insurers.... [T]he Workmen's Compensation Commission is an administrative agency, not a court of law and that there is no method provided by law by which it may adjust equities between insurance companies.... Absent statutory provisions, the resolution of contribution between successive carriers whether based on contract or equity should be resolved in an action at law or equity, apart from the workmen's compensation determination.
Singer, 362 So.2d at 592-93. The reduction in benefits that results from a preexisting condition "refers to benefits which the injured employee will not receive at all, not to benefits which will be paid by someone else." Thyer Mfg. Co. v. Mooney, 252 Miss. 629, 639, 173 So.2d 652 (1965).
¶ 8. Despite the suggestion in Singer that the employer held solely liable might have a right to seek contribution from another employer or carrier, seeking contribution does not appear to be a common practice. At least it has not resulted in reported case law. In fact, the general rule is that these allocations of responsibility are final for all purposes, not just for administrative agency actions. For example, after noting the potential harshness of assigning total responsibility to one employer who may have been much less liable than another employer, one authority said that the potential unfairness in one claim was balanced by the overall impact of single assignment of liability in every case. 4 *1230 ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 95.24, at 17-224 (1996).
¶ 9. In order to assign liability just to one employer, somewhat arbitrary rules have been developed. One author's interpretation of Mississippi law is this:
As to the question of the existence of liability, it is settled that the first or originating employer is exclusively liable when the recurrence of disability is solely attributable to the original injury, but that the subsequent employer or carrier is exclusively liable where the second disability has no causal relation whatever with the original injury. On the other hand, when both employments contribute to the ultimate disability, as when the original injury is aggravated or lighted up by the activity associated with the later employment to produce disability, the general rule, in the absence of statute, is that the last employer or carrier is exclusively liable.
VARDAMAN S. DUNN, MISSISSIPPI WORKMEN'S COMPENSATION § 188 (1990) (footnotes omitted).
¶ 10. Whether this is in fact the law in the state needs to be reviewed, first by examining the employer's arguments. The employer presents two theories that would assign to a subsequent employer all the liability for an injury that first manifested itself at an earlier employer. We have not found these theories to have been adopted explicitly in Mississippi. We are cited to treatises and dicta for their implications. The first theory is called the last injurious exposure rule. In one case, a claimant was exposed to dust during his employment at a company that changed ownership and insurance carriers after his exposure but before its diagnosis. Singer, 362 So.2d at 591. Because of his inhalation of the dust, the claimant suffered a significant loss of lung tissue. Id. The supreme court quoted this definition of "last injurious exposure":
When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.
Id. at 593, quoting 4 LARSON, WORKMEN'S COMPENSATION LAW § 95. The supreme court explained that the rule's purpose "is to set a definite and certain time for liability to attach and thus avoid the often difficult task of determining which of a series of injuries caused the disability or which of a series of exposures caused the disabling disease. In the absence of difficulty in locating a definite and certain time, the rule has no application." Singer, 362 So.2d at 593. The court found no uncertainty in that respect and therefore deferred deciding "the application of the rule in this state...." Singer, 362 So.2d at 593. The holding appeared to be that since "the disease and the resulting disability had manifested itself prior to the change of ownership of the factory and the degree of injury did not change," the liability was on the first employer and carrier. Id. That is a finding that nothing occurred after the second company became the owner to contribute to the disability. As defined in Singer, the last injurious exposure rule would require proof that something occurred during the second company's ownership that had a causal relation to the disability.
¶ 11. The employer argues that this rule was adopted in Bolivar County Gravel Co. v. Dial, 634 So.2d 99, 103 (Miss.1994). The court quoted Singer, including its refusal to adopt the rule at that time. Id. The Dial claimant argued that he had suffered from the effects of exposure to welding fumes for a ten year period, only eighteen months of which was during the coverage by Hartford Insurance. The claimant settled with U.S.F. & G., the insurance carrier who had the coverage for all but the last eighteen months of Dial's employment. Id. at 100. What we find to be the holding is a little different than an adoption of this rule. The court held that due to "the difficulty of locating a definite *1231 and certain point of injury, [the employer and second carrier] cannot be excused from liability." Id. at 104. The result in that case was that both sets of employers and carriers paid compensation. The case is too peculiar in its facts and limited in its pronouncement to be of utility.
¶ 12. A second rule advanced by the employer here is usually labeled "intervening cause." In successive injury cases, if the second injury is an aggravation that contributes independently to the final disability, then courts have found the subsequent employer liable for the entire claim. 4 LARSON, WORKMEN'S COMPENSATION § 95.20. On the other hand, "if the second incident does not contribute even slightly to the causation of the disabling injury," the first employer remains liable for all. Id., § 95.23, at 17-185. A clear aggravation of an initial injury makes the second employer solely liable. Id., § 95.22, at 17-175. Under this doctrine, the second workplace must independently contribute to the disability. Id. at 17-183.
¶ 13. We find these to be reasonable rules, consistent with existing interpretations of Mississippi law. They are also consistent with each other. We consequently adopt them as the applicable principles for this case.
¶ 14. Several pieces of evidence are offered to support the application of these theories: 1) the claimant's condition improved dramatically over a period of months following her surgery, 2) her condition worsened after she went to work at Belk, 3) her physician testified that doing the work she described at her subsequent employers would have aggravated her back condition, and 4) an MRI taken before working at Belk and Dollar Tree revealed no recurrent disc herniation while one taken after those jobs did indicate such a condition.
¶ 15. There is also evidence to contradict each of these premises. First, while the claimant's symptoms did improve, she testified never to being completely out of pain. Second, although she admitted her pain worsened while subsequently employed, she related no specific injury or aggravating factor, but rather she suffered pain because of the standing. Whether the standing aggravated her back injury or only caused the pain to manifest itself more is important. Third, Dr. McDonald said that a recurrent disc herniation did not require an injurious event but that such a condition could occur while someone was just sitting around. He agreed that working the two subsequent jobs would aggravate her condition. Whether he meant "aggravation" in the sense of the intervening cause doctrine, which is not talking about the ebb and flow of symptoms but an actual worsening of the injury, is ambiguous. Fourth, the August 22, 1996 MRI was interpreted to show "no evidence of recurrent disc bulge or protrusion," but it also indicated that she was suffering from right leg pain and her "interverbral disc at L4-L5 show[ed] modest narrowing and slight loss of signal intensity." Moreover, while discussing the August 22, 1996 MRI, Dr. McDonald noted "no unattached disc fragment having come through that hole, which would be a recurrent disc. It's possible that you could have had an unattached fragment within the disc space and that the scan would not specifically show you that." Thus, the situation may have already been developing.
¶ 16. The employer's arguments that the standing done by the claimant at her two post United Methodist jobs at least aggravated her condition are reasonable and supported by some of the evidence. This Court, however, is not the fact finder. We review only to determine whether substantial evidence exits to support the Commission's ruling. Bolivar County Gravel v. Dial, 634 So.2d at 103.
¶ 17. What the claimant needed to introduce was evidence on which the Commission could rely that her injury arose from her work at United Methodist and that the recurrent disc herniation was not the result of her work after she left United *1232 Methodist. Her principal witness, Dr. McDonald, stated that to a reasonable degree of medical probability the initial injury was "a significant contributing factor" to the new problems she reported after working at Belk and Dollar Tree. The issue however is whether her subsequent work played a role in her ailment, not whether her first injury was the principal cause. Dr. McDonald testified that the new herniation could have occurred without a new injury; we defer discussion of the manner in which he stated that opinion until the next issue. What the claimant's attorney asked was whether there could be a recurrent disc herniation without the initial injury, and the doctor stated that by definition there could not be. What the claimant's attorney never asked and what medical evidence never directly addressed was whether the work at Belk and Dollar Tree contributed in anyway to her present condition.
¶ 18. The factual difficulty of this case is that to some extent the claimant needed to present sufficient evidence to convince the fact-finder of a negative, i.e., that work at Belk or Dollar Tree did not contribute to the present level of injury. She had uncontested proof that the initial injury was due to work at the first employer. There was also testimony that it was quite possible that the recurrence of a disc herniation was unconnected to any subsequent work. We see merit in the employer's argument that there was never clear evidence introduced by the claimant that definitely ruled out a contribution from the work at the subsequent employers. However, there also was no evidence that the subsequent work did in fact contribute to the claimant's injuries. There is no suggestion that any event occurred at the subsequent employers.
¶ 19. We are faced in part with a burden of proof question. The general burden is on the claimant to prove the injury, that it arose in the course of employment, and the degree of disability. DUNN, WORKER'S COMPENSATION § 265. As any fact-finder, the Commission is entitled to rely upon the evidence introduced and the reasonable inferences. The employer argues that the claimant never presented enough evidence. It is true that the claimant never presented a witness that with conviction stated that the other work positively did not worsen her injury. We find that too high a hurdle, though. It is the claimant's burden to prove causation, but that burden cannot be made so onerous that for an acknowledged work injury it becomes likely that she can receive no compensation. That would occur if the proof in this case is found to be insufficient to allow United Methodist to be found liable. That same proof seems even less able to sustain the liability of Dollar Tree or Belk. When the evidence is all in, the Commission must be able to make a reasoned judgment as to what occurred.
¶ 20. There was enough evidence arising from the fact that the initial injury was undisputed and from the dearth of evidence that anything else ever occurred after Mrs. Ice left United Methodist. In other words, United Methodist's role was clearly proven and the claimant presented meaningful if not totally conclusive evidence discounting a contribution from others. There was no evidence by the employer that persuasively demonstrated an aggravation.
¶ 21. There was, as the administrative judge found, a "paucity of proof" on the question of intervening cause. The pain did worsen while standing, but that is not the same as saying that the condition was aggravated. Pain is a symptom of an injury; that the pain worsens with certain activity does not mean the activity is increasing the injury but only that the activity is painful as a result of the injury. Thus there was evidence upon which the Commission could rely to hold United Methodist liable for the entirety of the injury. Whether the correct legal standard was applied to this evidence is our final concern on this issue.
*1233 ¶ 22. We turn to exactly what the Commission held. This is the relevant language from the administrative judge's opinion, which was affirmed without additional findings by the Commission:
Central to the determination ... is the analysis of whether the proof in this case supports a causal connection between the initial, May 13, 1996 injury and the recurrent disc herniation suffered by the claimant or whether the treatment that the claimant now requires is a result of some intervening cause....
 The claimant's uncontradicted testimony is that the only injury she has ever experienced to her back occurred on May 13, 1996.
 There is no other evidence to suggest a subsequent or intervening cause for the recurrent disc.
 The claimant did not relate to Dr. McDonald a history of a second or subsequent injury.
 Dr. McDonald's testimony establishes that, from a medical standpoint, a recurrent disc herniation cannot occur except at the location of a prior herniation.
¶ 23. All of the foregoing is consistent with a Commission finding that the claimant had proved the sole cause of her injury was the work for United Methodist. The most important finding is the statement that there was no evidence "to suggest a subsequent or intervening cause for the recurrent disc" herniation. That might be better phrased to say that there was no evidence accepted by the fact-finder, as there was testimony permitting an inference that the standing at Belk and Dollar Tree worsened her condition. We note that immediately following the preceding section of the opinion are two sentences that could be read as a misstatement of the proper rule.
The original herniation makes the disc more susceptible of subsequent injury. Thus the employment relationship, from which the original injury resulted, becomes the substantial contributing cause of the second herniation.
¶ 24. Being a substantial cause is not the same as being the sole cause. Even so, the central fact-finding in the Commission's orderthere was no evidence of a subsequent or intervening causerequired liability to be assessed to United Methodist. It is that finding that causes us to uphold the Commission regardless of what the last-quoted sentences should be interpreted to mean.
¶ 25. One possible result of these rules for assigning sole legal responsibility between two potentially responsible companies is that a claimant who has analyzed the facts or law incorrectly and filed against the wrong employer, will be left with no remedy. The rules' purpose is to simplify the task for the Commission and leave the allegedly more complicated allocation of fault for a court should one employer later seek contribution from another. In this case the more complicated task may have been determining initial liability. We note that nothing in the statute or administrative rules prohibits a claimant from joining multiple employers in the proceedings who might be responsible for the injuries. A claimant should not have to pursue a claim at the Commission, through the initial appeal to circuit court, to this court, and potentially even beyond to the supreme court only to have the final adjudication be that another employer who is not in the litigation is responsible for the injuries. That determination would not even be binding on the absent employer since it was not a party. Conversely, if the employer joined by a claimant believes that another employer is responsible, it could seek joinder. There is no explicit provision permitting joinder of necessary parties. The procedural premise appears to be that a claimant makes her own decisions on whom to join. Nonetheless, the Commissioner's authority includes doing "all things conformable to law which may be necessary to enable them effectively to discharge the duties of their office." Miss. Code Ann. § 71-3-61(2) (Rev.1995). Adopting a rule permitting the employer *1234 to seek the joinder of another employer in situations such as here might be within that statutory authorization.
¶ 26. These compensation rules supposedly create procedures allowing the fair, timely, and relatively simple processing of claims for workers' injuries. High-stakes gambling on the other hand supposedly is statutorily encouraged only at the State's casinos. Unless the parties and Commission follow a process that joins other employers, the gamble for compensation benefits in multiple employer factual circumstances is all or nothing.

Issue 2: Whether the Commission appropriately relied on the medical testimony
¶ 27. Dr. McDonald stated that a recurrent disc herniation does not need a subsequent injury to materialize, but can occur while one is sitting and doing nothing. The claimant testified that her back hurt her when she was working both at Belk and Dollar Tree. The employer argues it was error for the Commission to rely on Dr. McDonald's statement about a recurrent disc developing spontaneously. The employer claims that this was mere speculation and that Dr. McDonald was referring to it merely as a possibility, whereas the claimant's recurrent disc being a result of her post surgery employment was a probability.
¶ 28. We accept the validity and importance of the employer's pointa claimant cannot prove her case through speculation. Whether each statement necessary for the relevant medical conclusions must be stated with reasonable certainty, if the diagnosis of causation is itself stated with reasonable certainty, is a different matter. Dr. McDonald was explaining a piece of evidence, the fact that one MRI showed no recurrent disc problem and a later one did. He may not have been certain as to why that was, but he was certain that the initial injury was why there was recurrent disc hernitation. He explained in detail how a disc becomes weakened after this type of surgery and can lead to a recurrent condition in ten to fifteen percent of cases. This is largely because a surgeon cannot remove all the material he might wish to in an operation. Should that excess material become dislodged, it can migrate to the affected disc and cause this result. Based on the medical history recounted to him, including the absence of any other injurious event, the doctor's testimony is sufficient to permit a finding that the sole cause of the claimant's current disability is the initial injury.
¶ 29. The employer argues that several comments by the claimant indicate the impact standing at work had on her back. The claimant testified she had told her supervisor at Belk, "That I was going to try to find a part-time job since she couldn't cut my hours and I couldn't work those long hours, because we had to work long hours standing all the time on our feet and we only got a 30 minutes break." She also complained that while working for Belk, she was "not allowed to sit down on the job except for your 30 minute break." When asked by her own attorney why she went from Belk to Dollar Tree, the claimant said "they had a chair that I could sit in when I needed to. I could stand a while or sit a while. I could swap it back and forth." These statements show only that standing at work hurt the claimant. They do not show that standing caused the back injury. The claimant had stated that the pain had never completely gone away after the surgery. We find no error.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY AFFIRMING THE DECISION OF THE WORKERS' COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.