SOUTHWICK, P.J.,
for the Court.
¶ 1. The claimant alleged that he suffered an injury to his back in the course of his employment. It was uncontroverted that the claimant had a back problem. Its source was the issue. The Commission found that substantial evidence supported that his injuries were not job related. On appeal the claimant, who is a Cuban native, alleges that his difficulty with speaking English explains why coworkers and supervisors were unaware of his injury. Accordingly, he alleges that the evidence was sufficient. We conclude that the Commission was aware of the language problems, gave them consideration, yet still found a failure of proof. We find no reversible error.
FACTS
¶2. The claimant Adelso Cedeno was born in Cuba and came to the United States in 1980 at age 23. According to one of Cedeno’s witnesses, the claimant had been part of the 1980 “boat lift.” This apparently refers to the mass exodus of Cubans from Mariel Harbor to Key West, Florida, an exodus of voluntary and involuntary emigrants that numbered 125,000. United States v. Zayas-Morales, 685 F.2d 1272, 1273 (11th Cir.1982); see also Garcia-Mir v. Smith, 469 U.S. 1311, 1311-12, *204 105 S.Ct. 948, 83 L.Ed.2d 901 (1985). For roughly seven years prior to the incidents involved in this litigation he had lived on the Mississippi Gulf Coast. On July 1, 1996, he began work for the defendant Moran Hauling as a maintenance man. Cedeno testified that four weeks later he and a coworker were moving a book case at Moran’s offices as part of their duties. He felt back pain and had to stop for ten minutes. He continued to work that day, which was Monday, July 29, and also the rest of the week.
¶ 3. On the next Monday, August 5, Ce-deno and his wife went to a nurse practitioner where he complained of back. pain. Cedeno did not return to work until Wednesday, August 7 and was laid off on August 18. After leaving employment with Moran, Cedeno went to see a general practitioner who diagnosed him with a herniated disc. He then went to a neurosurgeon.. After a lumbar myelogram was taken, the doctor recommended surgery on the disc. In the medical records, the neurosurgeon indicated that Cedeno was totally temporarily disabled because of the disc problem.
¶4. Not recounted here but described later as we analyze Cedeno’s arguments is the evidence of other explanations for the injury. In summary, there was testimony that he never complained of a back injury that occurred at work, that he had mentioned back pain even before the alleged event, and that he told at least one person that he had a back injury before he went to work at Moran.
¶ 5. After hearing all the testimony, the administrative judge, Virginia Wilson Mounger, prepared a detailed summary of the evidence upon which she relied. She denied benefits because she found that the “vast abundance of credible evidence” disputed that the back problems were a result of a work injury. The Commission and later the circuit court affirmed that order.
DISCUSSION
¶ 6. We start with an explanation of the role of the Workers’ Compensation Commission. The Commission is entrusted with making the initial determinations of the applicability of the relevant statutes to the facts that it finds to exist. An appellate court will uphold the decision if the fact-findings are based upon substantial evidence and if there is no error of law. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1296-97 (Miss.1990).
¶ 7. On appeal the claimant splits its argument into three issues, but they all suggest that the Commission gave insufficient weight to his language problems, that this is what made the evidence of contemporaneous claims of a job injury so meager, and that therefore he carried his burden of showing a compensable injury. All this together disputes how the testimony was evaluated.
¶ 8. In effect, the claimant is asking either that we reweigh the evidence, being more sensitive to the claimant’s language difficulties than was the Commission, or that we send this back to the Commission after ordering it to recalibrate its eviden-tiary scales. We proceed down the analytical trail somewhat differently than is set out in the claimant’s brief, but we consider each issue.

1. The evidence

¶ 9. The administrative judge in her evi-dentiary summary revealed that she appreciated the language limitations. The factual question was whether Cedeno’s injury occurred on the job or whether it had a different and non-work origin. We find nothing in the administrative judge’s opinion indicating that she ruled the way that she did because Cedeno failed to do something at the hearing or at his place of employment that someone with a better command of English would have done.
¶ 10. When Cedeno accompanied by his wife saw a nurse on Monday, August 5, he told her that he had been injured at work *205 on the previous Thursday as opposed to an entire week earlier as claimed before the Commission. Though not fatal to his claim, the administrative judge thought it suggestive that so soon after the injury he did not state the correct date. The nurse’s notes stated that he was cooperative but spoke little English. “His wife interprets most of the information.” The nurse compiled a page-long, single-spaced report that primarily contains statements that either Cedeno or his wife made though all are written as if they came from Mr. Cede-no.
¶ 11. He told a general practitioner on August 21 that he had been injured on the job, and referred to moving a book case. He repeated this to the neurosurgeon on September 24.
¶ 12. Balanced against what he told the medical professionals, no one at work— supervisors or coworkers — thought that he had mentioned a job injury. Cedeno himself testified that he told two supervisors. It could be argued that the language difficulties meant that the supervisors did not hear what Cedeno was trying to say. One of these two supervisors stated that he did not recall ever having a conversation with Cedeno. The other mentioned conversations with Cedeno and indicated no problems in understanding him at least as to level of conversation needed for simple orders that the supervisor gave. He stated positively that Cedeno never came to him with a complaint of injury.
¶ 13. The administrative judge had the benefit of hearing Cedeno herself. According to Moran’s brief, when necessary Mrs. Cedeno was “permitted to help him communicate or his attorney was allowed to lead him.” In the judge’s decision she noted the language difficulty but explicitly found that “the claimant’s testimony was understood.” Clearly there was strain required for understanding. Yet it was insufficient to convince the judge that there was a reasonable possibility that a disconnect existed between what Cedeno said to supervisors and what they heard. Since Cedeno testified that he told both supervisors and each of them stated that Cedeno had not, the administrative judge’s fact-finding appears based on Cedeno’s credibility and not on his clarity.
¶ 14. In addition, the judge did not just rely on the absence of communication at the workplace but also on the presence of statements that Cedeno had a pre-existing injury.
¶ 15. This is the evidence that the administrative judge had to put through a credibility filter:
1) Cedeno testified that he told a coworkers and two supervisors immediately about the injury.
2) The immediate supervisor testified that Cedeno did not tell him of the injury and that he noticed no difference in the manner in which Cedeno worked before and after the date of the alleged incident.
3) The other supervisor identified by Cedeno stated that he had no recollection of ever having a conversation with the claimant.
4) A coworker testified that Cedeno told him that he had suffered a back injury prior to his work with Moran Hauling. He remembered that Cedeno had complained of back pain throughout the summer but did not remember any difference in ability to work before or after the incident. The witness was helping Cedeno when the bookcase in question was being moved, and he did not remember being told by Cedeno that he injured his back and needed to stop work. This witness’s testimony was confusing and somewhat contradictory, as each attorney seemed able to lead him. Yet never did he confirm that Cedeno had told him of an injury while the two were working together.
5) Mrs. Cedeno testified that her husband immediately told her about his back injury. She also testified that he never previously had back problems.
*206 6) The initial medical report from August 5, 1996, indicated that Cedeno claimed that he had injured his back on August 1, not on July 29.
7) Both the general practitioner in late August and the neurosurgeon in late September reported that Cedeno had described the moving of a bookcase at work as the cause of injury.
8) Cedeno called a former Moran employee named Bonnie Vegas as a witness. In an affidavit that Cedeno signed in October 1996, he asserted that Vegas said that she had overheard him tell a supervisor about the work injury. The conversation was allegedly three months after the injury. At the hearing, Vegas would not confirm this. At most she heard the supervisor say “I forgot” when speaking to Cedeno. She had no idea what had been forgotten. On cross-examination, Vegas admitted that she had never overheard a conversation in which Cedeno told a supervisor of a job-injury. Based on these admissions, the administrative judge stated that Vegas was not sufficiently credible for her testimony to be considered.
9) Cedeno called a Hancock County deputy sheriff who knew the claimant because Mrs. Cedeno helped take care of his elderly mother. He said that at about the time of the claimed work-related injury, he had noticed Cedeno was no longer performing the small jobs around the deputy sheriffs house as he had before. His “ability to accomplish things has not been what it was prior to that time.” The witness had no personal knowledge of what had caused the change in Cedeno, but he “was told” that Cedeno was hurt at work. He does not indicate who told him.
10) The last witness was another coworker. She testified that Cedeno had told her on about his first day at work that he had a back problem and would be seeing a doctor soon about it. A copy of a record regarding Cedeno’s work at Moran was introduced through this witness, indicating that he had missed two days of work early in June. The implication that the employer was attempting to make was that this was the time that he went to some physician about his prior injury.
¶ 16. Cedeno’s attorney was entitled to examine witnesses about reasons they might not have understood that Cedeno was complaining of a work injury arising from moving a book case. Included in those reasons might be that they generally could not understand a good portion of what Cedeno said. In fact, though, a considerable number of the witnesses testified to various conversations with Cedeno. An inability to understand him was never mentioned.
¶ 17. One particular item of hearsay evidence was mentioned at trial that is of concern to Cedeno on appeal. The president of Moran testified that she had telephoned a restaurant owner who had once employed Cedeno. Moran’s president was asked whether that earlier employer said that Cedeno either had an injury there or had complained of back problems while working there. The answer was “yes.” An objection stopped any elaboration. The administrative judge immediately sustained the objection and does not mention this partial answer when explaining the basis for her decision.
¶ 18. The claimant may unavoidably be suspicious that this answer was considered anyway, but we find no basis to go beyond what the decision itself states.
2. Weighing the evidence and assessing credibility
¶ 19. In evaluating the evidence, some related but ultimately distinguishable authorities show how language barriers can impact this sort of claim. A Missouri court held that when a claimant who did not speak much English failed to get prior authorization for necessary medical treatment, he was not barred from making a claim for that treatment. Pruteanu v. *207 Electro Core, Inc., 847 S.W.2d 203, 206 (Mo.App.1993). The court said that the employer was fully aware of the claimant’s need for medical treatment and still refused to provide it. Id. A similar situation here would be if the employer-carrier were arguing that it did not receive the required actual notice of an injury within 30 days as required by statute. Miss.Code Ann. § 71-3-35(1) (Rev.1995). The claimant’s language problems could well explain and excuse that failure.
¶ 20. The claimant’s brief states that a reading of the administrative judge’s opinion “makes one suspect” that failure to report the injury was a factor in the decision. The claimant then proceeds to review factually and legally why the absence of notice should not bar recovery. We do not particularly disagree with the claimant’s review, but we cannot accept the premise that the Commission ruled on this basis. The decision explicitly says the predominating evidence was that this injury was not job related. Notwithstanding what the claimant “suspects,” we find that the Commission’s decision focused on the proper issue.
¶ 21. Pruteanu and a Louisiana case upon which it relied provide that language difficulties can prevent a claimant from making himself understood, which in turn can make less significant that he did not clearly claim to employers or doctors from the beginning that a work injury had occurred. See Lavergne v. Francois, 205 So.2d 767, 769 (La.App.1967), quoted in Pruteanu, 847 S.W.2d at 206 n. 1. In both precedents, the original fact-finder weighed that evidence along with the remainder of the evidence and held for the claimant. The appellate court upheld the fact-finding.
¶ 22. In our case, what concerned the Commission was whether by a preponderance of the evidence the claimant proved that this injury occurred at work. Evidence on both sides of the issue was introduced. While understanding the difficulties that the claimant had in expressing himself, the administrative judge also took into account the other evidence as she was required to do and held against the claimant. The full Commission agreed.
¶ 23. What now concerns this appellate court is whether the evidence of explanations other than job-relatedness were sufficiently substantial for the claimant’s claim to be rejected. There is nothing in our record that suggests the administrative judge did not consider any number of reasons for Cedeno’s failure to assert his claim of job-relatedness earlier than he did. The judge also considered evidence that Cedeno admitted that there was a different reason for his back pain.
¶ 24. At its simplest, the error alleged on this appeal is the Commission’s decision on credibility of witnesses. The administrative judge, presented with all the evidence, failed to accept the claimant’s view. The claimant had the burden. There was much self-interest to go around the entire array of witnesses, and what grouping of testimony was more credible is not our conclusion to make.
¶ 25. Finally, we note that even if Cedeno had a back problem that he brought with him to his employment at Moran, there is authority that the occurrence of an aggravating injury at Moran that independently contributed to the final disability would give Moran liability for the entire claim. 4 Larson, WoRkmen’s Compensation § 95.20. However, if the claimant continues to suffer pain while working for the new employer but there is no incident that independently contributes to the disabling injury, liability does not arise. Id., § 95.23, at 17-185. This Court recently determined that this was a correct view of the relevant legal principles and adopted them. United Methodist Senior Services v. Ice, 749 So.2d 1227, 1231 (Miss.Ct.App.1999). The Supreme Court has not yet made an explicit pronouncement on these principles. Id. at 1230-31. Until that Court determines otherwise, these are the controlling rules.
*208 ¶ 26. The Commission by adopting the administrative judge’s decision, determined that the claimant had failed to carry his burden that his condition was “the result of any work related injury” at Moran. There simply was no incident at Moran that he proved by a preponderance of the evidence had occurred, regardless of whether it caused injury or just aggravated an earlier injury.
¶ 27. Whether under successive injury principles or under more general rules, we find that the Commission had substantial evidence to support its findings. The evidence was evaluated with appreciation for the language problems. Since the weight and credibility of evidence is quintessentially a matter for the Commission, we affirm.
¶ 28. THE JUDGMENT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., IRVING, LEE, MOORE, AND THOMAS, JJ., concur.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J, AND BRIDGES, J.